CULLINAN, State Excise Com'r, v. FIDELITY & CASUALTY CO. OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. June 5, 1903.)

1. LIQUOR TAX CERTIFICATE—BOND—PERMITTING PREMISES TO BECOME DISORDERLY.
   Liquor Tax Law, § 11, subd. 1 (Laws 1896, p. 51, c. 112), provides for the issuance of liquor tax certificates authorizing the sale of liquor in buildings occupied as hotels. A bond executed by an applicant for a liquor tax certificate was conditioned that the obligor should not permit the premises to become disorderly, etc. *Held*, that the premises referred to in the bond included the rooms of the hotel in which the liquor business was carried on, and hence permitting such rooms to become disorderly was a breach of the bond.

2. TRIAL—MOTION TO DIRECT VERDICT.
   Where at the close of the evidence plaintiff moves for a direct verdict and defendant moves to dismiss the complaint, the parties agreed to the submission of questions of fact to the judge.

Appeal from Trial Term, New York County.

Action by Patrick W. Cullinan, as state commissioner of excise of the state of New York, against the Fidelity & Casualty Company

of New York and another. From a judgment for plaintiff and from an order denying a motion for a new trial, defendants appeal. Affirmed.

Argued before HATCH, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Charles C. Nadal, for appellants.

William E. Schenck, for respondent.

INGRAHAM, J. On April 26, 1901, the defendant Julius Stein made an application for a liquor tax certificate to sell liquor upon the premises No. 232 East Ninth street, in the city of New York. To obtain such a certificate, the applicant is required to make application therefor upon a blank furnished him, which contains certain questions as to the character of the business he intends to carry on and the premises upon which it is to be carried on, which he is required to answer. This blank that he filled up contained the following inquiries:

"Q. 6. Under which subdivision of section 11 of the liquor tax law is the traffic in liquors to be carried on? A. One. Q. 7. What other business is to be carried on in connection therewith, or on the same premises, by the applicant or any other person? A. Hotel. * * * Q. 12. Does the applicant intend to carry on a bona fide hotel on such premises? A. Yes. * * * Q. 16. Does such hotel conform to the laws, ordinances, rules, and regulations of the state or locality pertaining to the building, fire, and health department in relation to hotels and hotel keepers? A. Yes."

Question 17 relates to the number of bedrooms in the hotel, and the applicant said that there were 10 bedrooms above the basement, exclusive of those occupied by the family and servants. Question 18 also relates to the number of bedrooms in the building, and the dining room and kitchen accommodations therein. This application for a liquor tax certificate was received April 26, 1901, the tax of $800 was paid, and certificate No. 5,062 issued April 29, 1901, under subdivision 1, § 11, Liquor Tax Law (Laws 1896, p. 51, c. 112), at premises No. 232 East Ninth street, in the city of New York.

In pursuance of the statute, the appellants executed and filed, with the commissioner of excise a bond by which the defendant Julius Stein, as principal, and the defendant the Fidelity & Casualty Company of New York, as surety—

"Are held and firmly bound unto the People of the State of New York in the penal sum of Sixteen Hundred Dollars ($1,600) for the payment of which sum, well and truly to be made, we the said principal and surety bind ourselves, our heirs, executors, administrators, successors and assigns, respectively, jointly and severally, firmly by these presents.

"Dated this First day of April, 1901.

"Whereas, the above bounden principal is about to apply for a Liquor Tax Certificate in the sum of Eight Hundred Dollars ($800) authorizing said principal to traffic in liquor at 232 East 9th Street in the City of New York, County of New York, State of New York, under subdivision One of section 11 of the Liquor Tax Law of the State of New York [Laws 1896, p. 51, c. 112]:

"Now, therefore, the conditions of this obligation are such that if the said Liquor Tax Certificate applied for is given unto the said principal, and the said principal will not, while the business for which such Liquor Tax Certificate is given shall be carried on, suffer or permit * * * such premises

to become disorderly, and will not violate any of the provisions of the Liquor Tax Law, or any act amendatory thereof or supplementary thereto, * * * then the above obligation to be void; otherwise to remain in full force and virtue."

It was only upon the filing of this bond that the certificate was issued. The bond recites that the principal was about to apply for a liquor tax certificate under subdivision 1 of section 11 of the liquor tax law of the state of New York [Laws 1896, p. 51, c. 112], and the liquor tax certificate issued on the application was based upon the filing of this bond by the defendants. In the application the principal distinctly stated that the business he was to carry on was the business of a hotel upon the premises in question; that the applicant intended to carry on a bona fide hotel on said premises; that such hotel conformed to the laws, ordinances, rules, and regulations relating to hotels and hotel keepers; that the building contained at least 10 bedrooms above the basement, and conformed to all the requirements; and it was upon this application that the certificate was issued.

Subdivision 1 of section 11 of the liquor tax law (chapter 112, p. 51, Laws 1896, as amended by chapter 367 of the Laws of 1900; Hydecker's Gen. Laws, 1901, p. 2358, c. 29) provides for a tax "upon the business of trafficking in liquors to be drunk upon the premises, where sold, or which are so drunk, whether in a hotel, restaurant, saloon, store, shop, booth or other place." Section 17 of the act, as amended by chapter 367, p. 857, of the Laws of 1900 (Hydecker's Gen. Laws 1901, p. 2369, c. 29), provides that every person liable for the tax under subdivision 1 of section 11, on or before the 1st day of May in each year, shall prepare and make upon the blank which shall be furnished by the county treasurer of the county, or the special deputy commissioner of excise, a statement signed and sworn to by the applicant which shall state: "(9) If the traffic in liquors is to be carried on in connection with the business of keeping a hotel, the applicant shall also show by his application that all the requirements of section thirty-one hereof, defining hotels, have been complied with." Section 31 of the act provides that "the holder of a liquor tax certificate under subdivision one of section eleven of this act who is the keeper of a hotel may sell liquors to the guests of such hotel, * * * with their meals or in their rooms therein, except between the hours of one o'clock and five o'clock in the morning, * * * and the term 'hotel' as used in this act shall mean a building regularly used and kept open as such for the feeding and lodging of guests," and shall contain certain other requirements specified.

The bond was to be void only upon the condition that the principal would not, while the business for which such liquor tax certificate is given shall be carried on, suffer or permit such premises to become disorderly. "Such premises" relate to the premises upon which the principal is authorized by the payment of the tax to carry on the business of trafficking in liquors, and "such premises" are specified in the application. This application was for the right to traffic in liquors in this building used for a hotel. When the certificate was issued under this application, the principal became en-

titled to traffic in liquors in the whole "hotel," including the rooms occupied by the guests of the hotel, and the obligation of the defendant was that the principal would not, while the business was being carried on for which the liquor tax certificate was given, suffer the premises upon which he was authorized to carry on such business to become disorderly. That the whole building, with the possible exception of the room in which the principal's bar was located, was used for immoral purposes, is clearly established; but, if there was any question of fact, the right to have it submitted to the jury was waived by the defendants' asking to dismiss the complaint, and the plaintiff's asking for the direction of a verdict, without a request to submit any question of fact to the jury. "The motion· to dismiss the complaint was equivalent to a request to direct a verdict in favor of the defendant. Such being the case, the parties, by the motion made by each one of them, virtually agreed to submit the question of fact to the judge; and under such circumstances, if there is any evidence to uphold the decision, it is not error." Dillon v. Cockcroft, 90 N. Y. 649. See, also, Westervelt v.·Phelps, 171 N. Y. 212, 63 N. E. 962.

The judgment and order are therefore affirmed, with costs. All concur.